**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-25-00138-CV**

_____

**ADNAN AFZAL, D/B/A HEALING HEARTS CLINIC, Appellant**

**V.**

**RAJESH RAMINENI, Appellee**

**On Appeal from the 457th District Court**
**Montgomery County, Texas**
**Trial Cause No. 23-06-08309**

**MEMORANDUM OPINION**

Appellant Adnan Afzal, d/b/a Healing Hearts Clinic ("the Association"), a Texas medical professional association, challenges the trial court's Final Judgment awarding summary judgment in favor of Appellee Rajesh Ramineni ("Ramineni"). The Association complains the trial court erred by finding that Section 5.2b in the parties' Amended and Restated Shareholders' Agreement ("Shareholders' Agreement") is a covenant not to compete. The Association maintains that Section

1

5.2b is an Accounts Receivable Bonus Provision, which is a loyalty bonus. The Association also complains the trial court erroneously reformed Section 5.2b to give Ramineni an unconditional right to his Accounts Receivable ("AR"), found the Association breached the reformed provision, and awarded Ramineni all his alleged AR when the trial court had no statutory authority to reform Section 5.2b. For the reasons explained below, we reverse the trial court's Final Judgment and render judgment that Ramineni take nothing from the Association.

## BACKGROUND

Ramineni, a former physician-employee and shareholder of the Association sued the Association for breach of contract, alleging the Association failed to pay him distributions and other sums allegedly owed to Ramineni under the Shareholders' Agreement and related agreements, including shareholder bonuses and productivity compensation which were usually paid at the same time as quarterly profit distributions. Ramineni asserted that he was entitled to 50% of his AR at the Association pursuant to Section 5.2b of the Shareholders' Agreement and that the Shareholders' Agreement contained provisions including unenforceable covenants not to compete that violate section 15.50 of the Texas Business and Commerce Code, which is part of the Texas Free Enterprise and Antitrust Act of 1983 ("the Act"). *See* Tex. Bus. & Com. Code Ann. § 15.01. Ramineni requested that to limit forfeiture, the trial court should not consider the unenforceable provisions when interpreting

2

the Shareholders' Agreement or equitably reform the Shareholders' Agreement. Ramineni also brought claims for misappropriation of name, unfair competition, and an order to obtain books and records. Ramineni alternatively brought a claim for improper restraint on trade, arguing that any clause in the Shareholders' Agreement that directly or indirectly prohibits or restrains Ramineni from competing with the Association or engaging in trade or commerce except which are expressly authorized violates section 15.05 of the Act. Ramineni sought damages, including unpaid distributions, bonuses, and productivity compensation as well as attorney's fees, interest, costs, and an order commanding access to books and records.

Ramineni filed a Motion for Final Summary Judgment on his breach of contract claim for nonpayment of 50% of his AR as of the time he allegedly ceased to be a shareholder of the Association, and Ramineni sought a determination that the forfeiture provision in Section 5.2b, which prevented him from being entitled to such payment, was either an unenforceable noncompete which fails to comply with section 15.50 of the Act or an unlawful restraint on trade. Ramineni also sought a summary judgment on his claimed AR damages and agreed to nonsuit his remaining claims against the Association if the trial court granted him summary judgment damages on his breach of contract claim. Ramineni attached evidence to his motion, including, among other items, the Shareholders' Agreement, Ramineni's

Declaration, Ramineni's attorney's Declaration, and excerpts from the deposition of

Adnan Afzal ("Afzal").

The Shareholders' Agreement provides the Shareholders with 20% ownership

in the Association, an annual salary of $250,000, and quarterly distributions. Upon

termination of employment for any reason, a Shareholder must sell his shares, which

can only be transferred to the Association. Section 5.2b of the Shareholders'

Agreement, which concerns the voluntary transfers of a Shareholder's shares states:

> 5.2 Voluntary Transfers. A shareholder may only transfer his or her shares to the [Association]. Consistent with the foregoing, a Shareholder who desires to transfer, by sale, assignment or other disposition, all of the Shares owned by such Shareholder ("Transferor"), shall first give six (6) months written notice to the [Association] and the other shareholders (the "Sale Notice") stating the number of Shares owned by, and to be transferred by the Shareholder, and establishing a "Closing Date" of such sale, which shall be the Friday afternoon (close of business) immediately following 180 days after the date of the Sale Notice, or such other date as at least 75% of the remaining Shareholders (*i.e.*, all Shareholders other than the Transferor) agree.
>
> a. <u>Effect of Notice</u>: Upon giving the Sale Notice, Transferor will no longer receive distributions from the [Association], but the Transferor shall receive his Draw (in accordance with Section 3.1). The Sale Notice shall be deemed to be an offer by the Transferor to sell such shares to the [Association] in accordance with this Section 5.2 at the price and on the terms set forth in this Section 5.2b.
>
> b. <u>Purchase Price</u>: The Transferor shall sell his or her shares to the [Association] for the Agreed Value as provided in Section 6.4. In addition, if the Transferor continues to practice cardiology, but outside of a twenty (20) mile radius from the principal office of the [Association] or if such Transferor retires from the active practice of cardiology, then such Transferor shall also receive an amount equal to

4

> 50% of his or her accounts receivable as of the Closing Date, to be paid over a six (6) month period beginning thirty (30) days following the Closing Date. At the option of the [Association], the Agreed Value may be paid either at Closing or in six (6) equal monthly payments.

Ramineni stated that he ceased to be both an employee and shareholder of the Association on February 5, 2023, which is the "Closing Date" that should be used to determine his entitlement to 50% of his shareholder's AR under Section 5.2b of the Shareholders' Agreement. Ramineni maintained that 50% of his AR as of February 5, 2023 was $428,828.43, and he stated the Association failed to pay him this shareholder's buy-out payment that was due upon his cessation of membership in the Association. Ramineni argued that the forfeiture provision in Section 5.2b that purports to deny him his shareholder's buy-out payment if he continues to practice cardiology within twenty miles of the Association's principal office, which Ramineni agrees he is in violation of, is an illegal and unenforceable restraint of trade in violation of the Act and an unenforceable noncompete which fails to comply with the Act.

Ramineni argued that the forfeiture clause in Section 5.2b is unenforceable as a matter of law; the Shareholders' Agreement must be construed by omitting, severing, or striking the offending provision; and that he is entitled to 50% of his AR, as well as attorney's fees, interest, and costs. Ramineni asserted that Section 5.2b is an unenforceable noncompete because it does not satisfy any of the elements of section 15.50(b) of the Act, it lacks a duration requirement, and it is not properly

5

"'ancillary to or otherwise part of' an[] otherwise enforceable agreement[.]" Ramineni further argued that Section 5.2b is not reformable, and it cannot be reformed by adding a missing element. Ramineni stated that the Association had "breached the Shareholders' Agreement as properly read and interpreted after ignoring the unenforceable noncompete." Ramineni also noted that in early 2023, he paid the Association $100,000 to buy out a separate noncompete in his Employment Agreement with the Association.

The Association filed a Response to Ramineni's Motion for Final Summary Judgment. The Association stated that after Ramineni gave notice he was terminating his employment, his final day of employment was February 5, 2023. Ramineni bought out his non-compete in the Employment Agreement on February 9, 2023, and then opened or joined a cardiology practice located across the street and competed with the Association. The Association maintained that it had not prevented Ramineni from practicing cardiology or any other medical specialty because Ramineni bought out his non-compete.

The Association argued that Section 5.2b in the Shareholders' Agreement does not require Ramineni to practice further than twenty miles away from the Association or face a massive forfeiture; instead, it offers Ramineni an amount equal to 50% of his AR as a "bonus" or "parting gift" in addition to receiving the Agreed Value of his shares in the Association if he practices cardiology at least twenty miles

6

from the Association. The Association maintained that Section 5.2b is "ancillary to or part of" the enforceable Shareholders' Agreement. Ramineni had not suffered any damages due to the Shareholders' Agreement because he had been competing with the Association since buying out his non-compete in the Employment Agreement, which is also "ancillary to" the Shareholders' Agreement. The Association also argued that Ramineni failed to prove any actual breach of contract damages regarding the amount of 50% of his alleged AR as of February 5, 2023.

The Association attached, among other items, the Declaration of Tiffany L. Crawford ("Crawford"), the Association's Practice Manager, and excerpts from Afzal's deposition. In Crawford's Declaration, she stated that: in March 2018, Ramineni signed the Employment Agreement, which includes a non-competition clause; in March 2019 Ramineni entered into the Shareholders' Agreement; on January 5, 2023, Ramineni submitted his notice of termination; on February 9, 2023, Ramineni paid the Association $100,000 to buy out his covenant not to compete in the Employment Agreement; and Ramineni's last day of employment was February 5, 2023. Crawford stated the Shareholders' Agreement includes a provision that allows a departing shareholder who continues to practice cardiology but not in the Conroe or Woodlands community to receive an additional payment of an amount equal to 50% of the shareholder's AR as of his last day of employment. Crawford explained that since there was a non-compete agreement in the Employment

7

Agreement, the provision in the Shareholders' Agreement was an additional payment and did not restrain the departing shareholder from practicing cardiology. Crawford stated that since Ramineni terminated his employment, Ramineni has been competing with the Association in the same neighborhood across the street from the Association's main office in Conroe. Crawford explained that she was unable to determine the amount of Ramineni's AR as of his last day of employment using the Association's software platform because he did not request the amount until months later.

The Association filed a Traditional and No-Evidence Motion for Summary Judgment, explaining that Ramineni's suit arose from their disagreement over the interpretation of Section 5.2b of the Shareholders' Agreement. The Association argued that Section 5.2b is not an unlawful restraint of trade or an unenforceable noncompete because it is a "parting gift to the Transferor who . . . continues to practice cardiology, but moves away from the Conroe and Woodlands community[.]" The Association stated it does not owe Ramineni 50% of his AR because the Employment Agreement states that Ramineni has no ownership or financial interest in any of the Association's AR that are attributable to Ramineni's services. The Association maintained that there was no evidence that it breached any agreement or of damages.

The Association stated that Section 5.2b of the Employment Agreement states that Ramineni receives 50% of his AR as of the Closing Date if he continues to practice cardiology outside of the Association's community, which is described as a twenty-mile radius from the Association's main office. According to Ramineni's own Declaration, he is continuing to practice cardiology within twenty miles of the Association's main office. The Association argued that Section 5.2b is not an unenforceable non-competition agreement because the Employment Agreement states that Ramineni has no ownership or financial interest in the Association's AR and Ramineni received the Agreed Value of his shares from the Association. According to the Association, Ramineni is not damaged because the Shareholders' Agreement did not force Ramineni to give up or repay something of value in return for the Association's purchasing his shares, and Ramineni had been competing with the Association since buying out his non-compete in the Employment Agreement.

The Association's summary judgment evidence included the Employment Agreement, Shareholders' Agreement, and Crawford's Declaration. The Employment Agreement between the Association and Ramineni provides that the Employee acknowledges the Association is entitled to all compensation generated by the Employee in accordance with the Agreement and that the Employee "shall and does, expressly and irrevocably, transfer, assign or otherwise convey to the [Association] all right, title and interest the Employee has in and to any

9

compensation, whether in cash, goods or other items of value, resulting from or incident to this Agreement including any payments from any hospital." The Employee appoints the Association as his attorney-in-fact for collecting revenues, and the Association shall invoice for all the Employee's services and collect all accounts of the Employee.

Under the Employment Agreement, the Association provides the Employee with a $400,000 salary, and if the Employee becomes a shareholder, the Employee will be eligible for other payments, including distributions as provided in the Shareholders' Agreement that may be treated as bonus payments, as well as a bonus of 50% of any collections from the Employee's services over $600,000. Upon termination of the Employment Agreement, the Employee is entitled to receive "only the compensation accrued but unpaid as of the date of termination and shall not be entitled to additional compensation, except as expressly provided in this Agreement, the Shareholders' Agreement and the Bylaws of the Association." Upon Notice of Termination, which Ramineni provided to the Association, the Agreement terminates three months after such notice is given, and the Employee is entitled to all compensation accrued through the effective date of termination.

The Employment Agreement includes a Non-Compete provision, which states:

> In the event of termination of this Agreement by the Employee after the
> end of year 4 of this Agreement, then for a period of two (2) years from

the date of Termination, Employee shall not, without the prior written consent of the [Association], directly or indirectly, either through any kind of ownership (other than ownership of securities of publicly held corporations of which Employee owns less than 5% of any class of outstanding securities) or as a director, officer, agent, employee, contractor, consultant or otherwise, engage in or be connected with, in any way, any practice or business which is competitive with the business of the [Association] or any affiliate of the [Association], which specifically includes the practice of cardiology. This covenant not to compete shall apply to a radius of twenty (20) miles surrounding all Facilities: (i) where the [Association], or any affiliate of the [Association], has provided materials and/or services, or (ii) any Facility where Employee regularly provides services on behalf of the [Association], within twelve (12) months proper to Termination (the "Radius"). . . . Notwithstanding anything herein to the contrary, Employee may buy out the non-competition provisions . . . upon payment of $100,000[.]

Additionally, the Employee acknowledges that his access to the Association's "Confidential Information" concerning its business is sufficient consideration to support the covenant not to compete. The Employee also acknowledges that "he has no ownership or financial interest in any of the [Association]'s account receivables, fixed assets or other property, whether directly or indirectly." The record shows Ramineni bought out the non-compete clause in the Employment Agreement by paying the Association $100,000.

The Association filed a Response to Ramineni's motion for summary judgment, arguing that it had not taken any steps to prevent Ramineni from practicing cardiology or any other medical specialty since Ramineni paid $100,000 to contractually buy out his non-compete in the Employment Agreement. The

11

Association explained that Section 5.2b did not require Ramineni to practice further than twenty miles from the Association to avoid facing a massive forfeiture; rather, it provided Ramineni with a bonus or parting gift of an amount equal to 50% of his AR if he continued to practice cardiology at least twenty miles from the Association. The Association argued that Ramineni had not been damaged by Section 5.2b, which is "ancillary to" the enforceable agreement to sell his shares to the Association.

Ramineni filed a Response to the Association's summary judgment motion, arguing that his Motion for Final Summary Judgment not only creates a fact issue on every element of his breach of contract claim but establishes each of them as a matter of law. Ramineni argued that Section 5.2b is a forfeiture provision that amounts to a covenant not to compete because it does not comply with section 15.50 of the Act or because it is an unenforceable restraint on trade. Ramineni stated that Section 5.2b is an unenforceable forfeiture because it includes an indefinite cessation of the practice of cardiology within twenty miles of the Association, and a compensation provision made only in exchange for a non-compete promise is precisely the sort of restraint of trade that is prohibited by Texas law.

Ramineni argued that in addition to the AR compensation forfeited under Section 5.2b, he forfeited bonus amounts that he would have otherwise received for the quarter ending on February 28, 2023, and the Association wanted to only give him a nominal amount for his 20% interest in the Association that initially cost him

12

$180,000. Ramineni argued that these "one-size-fits-all forfeitures also amount to impermissible and unenforceable penalties." Ramineni stated that a forfeiture for competing after leaving the Association is an unenforceable noncompete and unreasonable restraint on trade that the trial court can remedy by ignoring the forfeiture language and enforcing the Shareholders' Agreement as though the forfeiture provision were not present. Ramineni pointed to Afzal's deposition testimony in which Afzal testified that Article II of the Shareholders' Agreement restricts a shareholder's ability to compete with the Association and that a shareholder breaches Article II by directing business to a competitor of the Association.

Ramineni argued that the Shareholders' Agreement modifies and trumps the language in the earlier Employment Agreement, which is legally and factually irrelevant to his claims under the Shareholders' Agreement. In support of that argument, Ramineni pointed to Crawford's deposition testimony that the Employment Agreement was modified by the Shareholders' Agreement and was not used to calculate Ramineni's salary and bonuses for 2022 and 2023. Ramineni stated that the Association's bonus practices "were largely based on custom and were not reduced to any formal agreement but are evidenced by a formula in a spreadsheet that [the Association] prepared monthly[,]" but the bonuses were calculated at the same time as distributions as prescribed by the Shareholders' Agreement. Ramineni

13

noted that Section 5.2a of the Shareholders' Agreement provides that when a sale notice is given, a shareholder ceases to be entitled to distributions, but it does not mention bonuses. Ramineni argued that the parties' partially-written and partially-unwritten employment payment arrangement would have caused him to forfeit the majority of his employment compensation for at least one month. Ramineni objected to, among other things, any consideration of the Employment Agreement and to Crawford's discussion of the Employment Agreement in her Declaration as well as her testimony concerning her interpretation of the Employment and Shareholders' Agreements. Ramineni attached, among other evidence, his Response Declaration, Shareholders' Distribution Worksheets, and excerpts from Crawford's deposition.

Ramineni also filed a Further Reply to the Association's Motion for Summary Judgment, arguing that the Association's focus on the non-compete in the Employment Agreement does not eliminate the fact that there is also a non-compete in the Shareholders' Agreement.

The Association filed a Reply in Support of its Traditional and No-Evidence Motion for Summary Judgment and a Sur-Reply to Ramineni's Motion for Summary Judgment. The Association attached excerpts from Ramineni's deposition during which Ramineni did not include AR as part of his damages. The Association claimed that Ramineni did not designate a medical billing expert or an accountant specializing in healthcare matters to establish his alleged AR damages.

The Association argued that the Shareholders' Agreement does not supersede the Employment Agreement, and there was never any guarantee that Ramineni would become a shareholder of the Association. Ramineni agreed to the Shareholders' Agreement, including the provision triggering the sale of his shares at the Agreed Value and Section 5.2a, which states that once a Transferor gives the Sale Notice, he will no longer receive distributions. The Association maintained that the Shareholders' Agreement is a partially integrated contract that contains an "'entireties' clause . . . and is 'integrated' in that it 'constitutes the entire agreement among the parties hereto with respect to the Shares and supersedes all prior agreements, if any, among the parties as to the matters covered herein.'" The Association noted that in his Response to the Association's summary judgment motion, Ramineni claimed he is also entitled to bonuses and distributions but then asks the trial court to ignore the Employment Agreement, which is the only agreement that refers to a bonus. The Association explained that it was Ramineni who chose to terminate his employment with the Association and then claimed that the Association should compensate him for doing so despite the agreements he entered into.

The trial court granted Ramineni's Motion for Final Summary Judgment finding:

> that the forfeiture provision of Section 5.2b of the Shareholders' Agreement is unenforceable and unreformable and that Sections 5.2b

15

of the Shareholders' Agreement must be read and construed after severing and without consideration of the forfeiture provision as shown below:

*The Transferor shall sell his or her shares to the [Association] for the Agreed Value as provided in Section 6.4. In addition, ~~if the Transferor continues to practice cardiology, but outside of a twenty (20) mile radius from the principal office of the [Association] or if the Transferor requires from the active practice of cardiology, then such~~ Transferor shall also receive an amount equal to 50% of his or her accounts receivable as of the Closing Date, to be paid over a six (6) month period beginning thirty (30) days following the Closing Date. At the option of the [Association], the Agreed Value may be paid either at Closing or in six (6) equal monthly payments.*

The trial court found that the Association breached the Shareholders' Agreement by failing to pay Ramineni for his AR as required by Section 5.2b of the Shareholders' Agreement "as construed above." The trial court awarded Ramineni $428,828.43 in breach of contract damages, as well as attorney's fees, interest, and costs. The trial court non-suited and dismissed without prejudice any of Ramineni's claims for which summary judgment was not granted. The trial court stated that all objections and other ancillary matters to Ramineni's Motion for Final Summary Judgment are ruled on in Ramineni's favor.

The trial court denied the Association's Traditional and No-Evidence Motion for Summary Judgment. The trial court also denied the Association's Motion for New Trial and its Motion for Reconsideration of Ramineni's Motion for Final Summary Judgment.

16

## ANALYSIS

In issue one, the Association complains the trial court erred by finding that Section 5.2b in the parties' Shareholders' Agreement is a covenant not to compete. In issue two, the Association argues that even if Section 5.2b could be deemed a covenant not to compete, the trial court did not have the authority to reform Section 5.2b, award Ramineni an unconditional right to his AR, and find that the Association breached the reformed provision. In issue three, the Association complains the trial court erred by determining that Ramineni conclusively proved the amount of his alleged AR. In issue four, the Association argues that Ramineni cannot establish that Section 5.2b is an unreasonable restraint on trade in violation of section 15.05(a) of the Act.

We review a trial court's decision to grant summary judgment de novo. *See Shell Oil Co. v. Writt*, 464 S.W.3d 650, 654 (Tex. 2015) (citation omitted). "When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary-judgment evidence and determine all questions presented." *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019).

We view the evidence in the light most favorable to the nonmovant. *Writt*, 464 S.W.3d at 654 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)). In doing so, we indulge every reasonable inference and resolve any doubts against

the motion. *See City of Keller*, 168 S.W.3d at 824. "Undisputed evidence may be conclusive of the absence of a material fact issue, but only if reasonable people could not differ in their conclusions as to that evidence." *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012) (citation omitted). When a plaintiff moves for summary judgment on its claim, it must establish its right to summary judgment by conclusively establishing all elements of its cause of action as a matter of law. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). The movant has the burden to show with competent summary-judgment evidence that no genuine issue of material fact exists, and he is entitled to summary judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Once a plaintiff meets this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Smiley Dental-Bear Creek, P.L.L.C. v. SMS Financial LA, L.L.C.*, No. 01-18-00983-CV, 2020 WL 4758472, at *4 (Tex. App.—Houston [1st Dist.] Aug. 18, 2020, no pet.) (mem. op.). Evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions considering all the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

18

*Did the trial court erroneously conclude that Section 5.2b in the Shareholders'*
*Agreement is a covenant not to compete?*

The enforceability of a covenant not to compete is a question of law for the court. *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 792 (Tex. App—Houston [1st Dist.] 2001, no pet.). We review questions of law de novo and without deference to the lower court's conclusion. *Id.* In its Final Judgment, the trial court did not explain why the forfeiture provision in Section 5.2b is unenforceable. Accordingly, we will uphold the trial court's conclusion upon any legal theory that is supported by the evidence. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Valley Diagnostic Clinic, P.A. v. Dougherty*, 287 S.W.3d 151, 155 (Tex. App.—Corpus Christi-Edinburg 2009, no pet.).

Section 15.05(a) of the Act provides, "Every contract, combination, or conspiracy in restraint of trade or commerce is unlawful." Tex. Bus. & Com. Code Ann. § 15.05(a). The Act also addresses the criteria for enforceability of covenants not to compete:

> (a) Notwithstanding Section 15.05 and subject to any applicable provision of Subsection (b), and section 15.501, a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

> (b) A covenant not to compete relating to the practice of medicine is enforceable against a person licensed as a physician by the Texas

19

Medical Board if such covenant complies with the following requirements:

  (1) the covenant must:

    (A) not deny the physician access to a list of his patients whom he had seen or treated within one year of termination of the contract or employment;

    (B) provide access to medical records of the physician's patients . . .; and

    (C) provide that any access to a list of patients' medical records . . . shall not require such list or records to be provided in a format different than that by which such records are maintained . . .

  (2) the covenant must provide for a buy out of the covenant by the physician . . .; and

  (3) the covenant must provide that the physician will not be prohibited from providing continuing care and treatment to a specific patient or patients during the course of an acute illness even after the contract or employment has been terminated.

. . .

Act of Sept. 1, 1999, 76th Leg., R.S., ch. 1574, § 1, 1999 Tex. Gen. Laws 5408-09;

Act of June 19, 2009, 81st Leg., R.S., ch. 971, § 1, 2009 Tex. Gen. Laws 2565

(current version at Tex. Bus. & Com. Code Ann. § 15.50(a), (b)).[1]

Sections 15.05(a) and 15.50(a) together provide that a contract in restraint of trade is unlawful and unenforceable unless it is a covenant not to compete that meets the requirements set forth in section 15.50(a). *See* Tex. Bus. & Com. Code Ann. § 15.05(a); Act of Sept. 1, 1999, 76th Leg., R.S., ch. 1574, § 1, 1999 Tex. Gen. Laws 5408-09. The Act states that if the limitations as to time, geographical area, scope of

---

[1] The Legislature amended section 15.50 of the Texas Business and Commerce Code in 1999 and 2009, and we cite to those amendments instead of the current version of the statute because those amendments contain the versions of subsections (a) and (b) that apply in this case.

activity to be restrained are not reasonable or they impose a greater restraint than is necessary to protect the goodwill or other business interest of a promisee, "the court shall reform the covenant to the extent necessary to cause the limitations . . . to be reasonable and to impose a restraint that is not greater than necessary" and "enforce the covenant as reformed . . . ." Tex. Bus. & Com. Code Ann. § 15.51(c). That said, if Section 5.2b is not a covenant not to compete, then Chapter 15 of the Act does not apply and there is no statutory authority to reform Section 5.2b. Thus, we must first determine whether Section 5.2b is a covenant not to compete.

The Association maintains that Section 5.2b does not meet the statutory requirements of an enforceable covenant not to compete because it does not restrain, limit, or otherwise preclude Ramineni from practicing cardiology or seeing his former patients, but simply entitles him to a 50% AR bonus payment if he opts to practice outside a twenty-mile radius of the Association's main office. The Association argues that Section 5.2b's bonus provision gives Ramineni an opportunity to receive an additional AR payment to which he is not otherwise entitled, since Ramineni agreed to the Employment Agreement in which he gave all right, title, and interest in his AR to the Association. The Association states that an incentive not to compete is materially different from a prohibition or penalty on competition and cites *Exxon Mobil Corporation v. Drennen* to support its argument

that conditioning bonus compensation on continued loyalty does not constitute a covenant not to compete. 452 S.W.3d 319, 329 (Tex. 2014).

Ramineni argues that the trial court correctly determined that Section 5.2b's forfeiture provision is an unenforceable covenant not to compete and that the Association's use of the word "bonus" is misleading because that term is not utilized in the Shareholders' Agreement. Ramineni also complains that the Association argues for the first time on appeal that the bonus is a loyalty bonus. Ramineni notes that Section 5.2b's restriction requires the "indefinite/permanent cessation of practice of cardiology within 20 miles[,]" and although the noncompete is connected to a shareholder buy-out, that does not change the fact that the compensation provision is in exchange for a non-compete promise. Ramineni argues that Section 5.2b is wholly missing multiple elements, including a time limit, which are statutorily required for it to be a valid and enforceable noncompete, and that the missing elements cannot be added through reformation.

Ramineni also maintains that the Texas Supreme Court did not create a general exception for loyalty agreements, bonus payments, or forfeiture provisions in *Drennen* as the Association asserts. *See* 452 S.W.3d at 322, 327. Ramineni argues that *Drennen* does not apply in this case because the *Drennen* Court only narrowly found there was a distinction between a covenant not to compete and a forfeiture provision in a non-contributory profit-sharing plan to which the employee

contributed nothing. *See id.* at 329. Ramineni points out that he contributed by paying $180,000 to become a shareholder and personally performing and contributing to the Association's billing.

Ramineni maintains that the AR payment is not a bonus or loyalty agreement but part of a buy-out purchase price for his shares in the Association. We note that Article II of the Shareholders' Agreement states:

> The Shareholders each acknowledge that their personal efforts are pivotal to maintaining and building value of the [Association] and that each will be adversely affected economically if the other directs any medical business opportunities toward any competitor of the [Association]. Therefore, each Shareholder shall use their best efforts to promote the [Association] and to work for the [Association].

The Shareholders knew that their personal efforts were pivotal to protect the other shareholders' economic interests in the Association and agreed to use their best efforts to promote the Association. When an employee becomes a shareholder, the shareholder becomes an owner who is beyond an employee, and the shareholder's interests are furthered by fostering and protecting the goodwill of the business. *Cf. Marsh United States, Inc. v. Cook*, 354 S.W.3d 764, 777 (Tex. 2011) (making the same conclusion as to stockholders).

We note that Ramineni's brief repeatedly refers to Section's 5.2b's caption–Purchase Price–in arguing that the AR payment was just part of the purchase price for his shares in the Practice. We also note that section 16.10 of the Shareholders' Agreement states that the captions used in the Agreement "are for convenience only

and are not to be construed in interpreting this Agreement." Section 5.2b specifically states that the shares shall be sold for the "Agreed Value as provided in Section 6.4[,]" which is defined as "$1.00 per share or such amount as 75% or more of the Shareholders agree at the annual meeting of shareholders." Section 5.2b's language states that "[i]n addition" to selling his shares for the Agreed Value, the Transferor who continues to practice cardiology outside of a twenty-mile radius "shall also receive . . . 50% of his . . . accounts receivables as of the Closing Date, to be paid over a six (6) month period beginning thirty (30) days following the Closing Date."

We disagree that Section 5.2b's restriction requires the "indefinite/permanent cessation of practice of cardiology within 20 miles." The Shareholders' Agreement provides that the "Closing Date[]" shall be the Friday "immediately following 180 days after the date of the Sale Notice," which also required six months written notice. Thus, if Ramineni chose to practice outside that twenty-mile radius, Ramineni would receive an AR payment to which he was not otherwise entitled to approximately one year and thirty days after providing the Sale Notice. Moreover, Ramineni entered into the Shareholders' Agreement, which specifically states that: the shares are valued at $1.00 per share; Ramineni owns 20 shares and has 20% ownership in the Association; new shareholders must pay a buy-in price of $180,000 to be divided among the current shareholders; upon giving the Sale Notice, a shareholder will no

24

longer receive any distributions; and a shareholder will only receive $1.00 per share upon sale unless otherwise agreed.

That said, the Texas Supreme Court has generally defined covenants not to compete thus: "'Covenants that place limits on former employees' professional mobility or restrict their solicitation of the former employers' customers and employees are restraints on trade and are governed by the Act.'" *Drennen*, 452 S.W.3d at 327 (quoting *Marsh*, 354 S.W.3d at 768 ). The *Drennen* Court stated that forfeiture provisions conditioned on loyalty do not restrict or prohibit an employee's future employment opportunities but reward employees for loyalty. *Id.* The *Drennen* Court explained that a former employee does not need to bring a breach of contract suit to enforce a forfeiture provision concerning an employee stock-ownership plan because the profit-sharing plan belongs to the employer and has a purpose that is unrelated to restraining competition. *See id.* (citing *Marsh*, 354 S.W.3d at 777).

Likewise, the incentive programs at issue in *Drennen*, which included bonus awards and restricted stock options, contained termination provisions that enabled ExxonMobil to terminate outstanding awards if, among other things, the employee engaged in detrimental activity such as becoming employed by a third party that competes with ExxonMobil and creating a material conflict of interest. *See id.* at 322-23. The *Drennen* Court explained that Drennen did not promise to refrain from competing with ExxonMobil; instead, he agreed that in exchange for his work and

25

loyalty he would receive bonus compensation in the form of stock options with a condition of continued loyalty. *See id.* at 329. Such continued loyalty was a power reserved by ExxonMobil should Drennen opt into the incentive programs, and if Drennen chose to compete, he would forfeit his shares that were in the restricted phase that were to be awarded as bonus compensation. *See id.* The *Drennen* Court distinguished a covenant not to compete from a forfeiture provision in a non-contributory profit-sharing plan because such plans do not restrict the employee's right to future employment but force the employee to choose between competing with a former employer without restraint and accepting benefits of a plan to which the employee contributed nothing. *See id.* The *Drennen* court held that forfeiture clauses in non-contributory profit-sharing plans clearly are not covenants not to compete. *See id.*

Using the *Drennen* scenario as a template for the contractual provision at issue here, we hold that Section 5.2b is a forfeiture clause that does not act as a restriction on Ramineni's right to future employment because the evidence shows Ramineni is practicing cardiology and competing with the Association within a twenty-mile radius of the Association's main office. Thus, Section 5.2b does not violate the Act's purpose to maintain and promote competition in trade and commerce occurring in Texas. *See* Tex. Bus. & Com. Code Ann. § 15.04. Texas law gives parties a broad freedom to contract as they see fit as long as their agreement does not violate the law

26

or public policy. *Nacogdoches Heart Clinic, P.A. v. Pokala*, No. 12-11-00133-CV, 2013 WL 451810, at \*4 (Tex. App.—Tyler Feb. 6, 2013, pet. denied) (mem. op.). Here, the parties agreed to Section 5.2b which was not a promise on Ramineni's part to not compete but rather a permissible choice as Drennen had: to preserve his right to receive a 50% AR bonus–unvested compensation that belongs to the Association–by continuing to practice cardiology outside of a twenty-mile radius from the Association's principal office to protect the Association's business interests. *See Drennen*, 452 S.W.3d at 328-29. Ramineni chose to compete within that twenty-mile radius and to forfeit a 50% AR bonus to which he otherwise had no right. *See id.* at 329. Under these circumstances, we hold that Section 5.2b's forfeiture provision is not a covenant not to compete and that the trial court erred by concluding that it is. We sustain issue one.

*Did the trial court have the authority to reform Section 5.2b?*

In issue two, the Association complains the trial court was not statutorily authorized to reform section 5.2b. We agree. As noted above, if Section 5.2b is not a covenant not to compete, then the Act does not apply and there is no statutory authority to reform Section 5.2b under the Act. We have held Section 5.2b is not a covenant not to compete. Accordingly, Section 5.2b does not have to meet the requirements set forth in the Act, and the trial court has no statutory authority to reform Section 5.2b to make it a reasonable covenant not to compete or to impose a

restraint that is not greater than necessary or to enforce the covenant as reformed. *See* Tex. Bus. & Com. Code Ann. §§ 15.05(a), 15.51(c). We hold that the trial court erred by finding that Section 5.2b is a covenant not to compete, reforming the Shareholders' Agreement without statutory authority, finding the Association breached the Shareholders' Agreement as reformed, and awarding Ramineni breach of contract damages which includes the 50% AR bonus to which he is not entitled.

In this vein, we note that the Association alleged in its no evidence motion for summary judgment that Ramineni has produced no evidence that the Association breached the Agreement, an element on which Ramineni bore the burden of proof. Specifically, the no evidence motion for summary judgment stated that "there is no evidence that Dr. Ramineni was owed distributions pursuant to the Amended and Restated Shareholders' agreement." The basis of the breach of contract claim was that Ramineni was owed distributions by removing the Section 5.2b restriction. We have found that this restriction is valid and it applies to this contract. We conclude that there is no evidence that the Association breached the contract. We sustain issue two.

*Did Ramineni fail to conclusively prove the amount of his alleged AR damages?*

Having determined that the trial court erred by awarding Ramineni breach of contract damages, which include the 50% AR bonus, we need not consider the

28

Association's issue three complaining that Ramineni failed to conclusively prove the amount of his alleged AR payment. *See* Tex. R. App. P. 47.1.

### *Did Ramineni establish that Section 5.2b is an unreasonable restraint on trade in violation of section 15.05(a) of the Act?*

In issue four, the Association argues that Ramineni did not alternatively establish that in the event that Section 5.2b is not a covenant not to compete, it is an unreasonable restraint on trade in violation of section 15.05(a) of the Act. *See* Tex. Bus. & Com. Code Ann. § 15.05(a). The Association argues that since Ramineni did not prove that Section 5.2b has an adverse effect on competition in the relevant market, Ramineni's claim fails as a matter of law.

Ramineni notes that since none of the damages the trial court awarded in the Final Judgment were damages for his claim that Section 5.2b was an unreasonable restraint on trade in violation of section 15.05(a) of the Act, the Court may be able to simply disregard this issue. Ramineni contends that he did not seek summary judgment on his section 15.05(a) claim, which is not before the Court on appeal, and the trial court did not grant any relief based on his proving a violation of section 15.05(a). In fact, the Final Judgment in this case states that "Any claims of Plaintiff for which Summary Judgment is not granted in this Final Summary Judgment *are non-suited and dismissed without prejudice*." [emphasis added] In the Association's Reply Brief, it states that Ramineni concedes he has not proven his section 15.05(a) claim.

29

Based on our review of Ramineni's Motion for Final Summary Judgment, we agree that Ramineni did not seek summary judgment on his section 15.05(a) claim, that the trial court did not grant any relief on that claim, and that the claim was dismissed without prejudice. Thus, this issue is not properly before this Court. We sustain issue four.

## CONCLUSION

Having addressed all the Association's issues, we reverse the trial court's Final Judgment which found that Section 5.2b is a covenant not to compete and awarded Ramineni damages, attorney's fees, interest, and costs. Because Ramineni produced no evidence that the Association breached the Agreement in response to the Association's no evidence motion for summary judgment, and because all other claims were dismissed without prejudice, we render judgment in favor of the Association that Ramineni take nothing on his claims against the Association.

REVERSED AND RENDERED.

JAY WRIGHT
Justice

Submitted on April 23, 2026
Opinion Delivered August 6, 2026

Before Johnson, Wright and Chambers, JJ.